

FILED
Jan 08, 2019
01:10 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Lashonda Smith | ) Docket No. 2018-06-0810 |
| | ) |
| v. | ) State File No. 31238-2018 |
| | ) |
| Macy's Corporate Services, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Joshua D. Baker, Judge | ) |

---

### Affirmed and Remanded - Filed January 8, 2019

---

In this interlocutory appeal, the employee was hired as a seasonal worker at the employer's distribution center in Portland, Tennessee. During the recruiting process, the employee was informed that transportation to and from the distribution center would be available through a third party, but a fee would be charged for this service. During a ride from the distribution center to her hometown, the bus on which the employee was riding caught fire and, while evacuating the bus, the employee was allegedly injured. The employee sought medical and temporary disability benefits at an expedited hearing, but the trial court declined to order such benefits, concluding the employee had not shown she was likely to prevail at trial in proving the alleged injury arose primarily out of or in the course and scope of her employment. We affirm the trial court's order and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Donald D. Zuccarello, Nashville, Tennessee, for the employee-appellant, Lashonda Smith

Garrett M. Estep, Memphis, Tennessee, for the employer-appellee, Macy's Corporate Services

### Factual and Procedural Background

In October 2015, Macy's Corporate Services ("Employer") contracted with a third party, Safe Harbor of Nashville ("Safe Harbor"), to obtain seasonal employees. Safe Harbor agreed to "source and recruit . . . qualified candidates as [Employer] may request

for direct seasonal employment, in such numbers and with such skills as then may be specified by [Employer]." In consideration for this service, Safe Harbor was paid an amount equal to fourteen percent of the hourly wages the seasonal employees earned. In addition, the contract stated "[a]ll expenses incurred by [Safe Harbor] to perform are at [Safe Harbor's] sole cost." Safe Harbor was identified as an independent contractor, and Safe Harbor agreed it "shall not hold itself out as an agent, servant, workman, or employee of [Employer] for any purpose whatsoever and is not authorized to make any commitment on [Employer's] behalf."

In 2016, Safe Harbor recruited seasonal workers in Clarksville, Tennessee. Lashonda Smith ("Employee") responded to these efforts and submitted an application for seasonal employment. During the application process, Employee was informed that Safe Harbor operated a bus from the Clarksville, Tennessee area to Employer's distribution center in Portland and offered that service to any seasonal employees who required such transportation. The cost of this transportation was deducted by Safe Harbor directly from Employee's bank account. It is undisputed that Employer did not pay transportation costs directly or reimburse transportation costs for seasonal employees.

In 2017, Employee again applied for seasonal employment with Employer through Safe Harbor. Although Safe Harbor offered seasonal workers the option to use its transportation service, the payment scheme had changed. Instead of Safe Harbor deducting the transportation fee directly from the worker's bank account, the fee was deducted by Employer from the worker's paycheck and remitted to Safe Harbor. Employee signed a form authorizing Employer to deduct this fee from her paycheck.

On November 29, 2017, Employee had completed her shift and boarded the Safe Harbor bus to return to Clarksville. During transit, passengers detected smoke and saw flames coming from the back of the bus. They yelled to the driver, and Employee testified the bus began to leave the road, causing passengers to panic. As she approached the front of the bus in the rush to exit, Employee realized the bus had started rolling backwards. She jumped from the rolling bus. The next thing she recalled was waking up in an ambulance. She alleged she sustained various injuries as a result of jumping from the bus.

Employee sought workers' compensation benefits as a result of this incident, but Employer declined to pay any such benefits. It asserted Employee's alleged injuries did not arise primarily out of or occur in the course and scope of her employment. Following an expedited hearing, the trial court declined to order the initiation of benefits, concluding Employer did not furnish or reimburse transportation costs for seasonal employees, and Employee had not established an exception to the general rule that injuries suffered while traveling to or from work are not compensable. Employee has appealed.

2

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

**Analysis**

A compensable workers' compensation injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2018). An injury is deemed to arise primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

Historically, Tennessee courts have held that the statutory requirements that an injury arise out of and in the course of the employment are not synonymous, "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2015). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the "course of employment" requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

In contrast, "arising out of" employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). The element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Blankenship*, 164 S.W.3d at 354. Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.*, 270 S.W.2d 389, 390 (Tenn. 1954).

Generally, injuries sustained by an employee while traveling to or from work are not considered to have arisen out of or in the course and scope of employment unless they occur on the employer's premises. *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525 (Tenn. 2006). Tennessee has, however, recognized certain exceptions to the "coming and going" rule, which the Supreme Court has explained as follows:

> Under the "special errand rule" exception, an employee must be compensated for an off-premises injury "while performing some special act, assignment or mission at the direction of the employer." Another exception applies to injuries sustained by employees traveling in a company car while going to or coming from work. *Eslinger v. F & B Frontier Constr. Co.*, 618 S.W.2d 742, 744 (Tenn. 1981) ("It is well settled in this State that where transportation is furnished by an employer as an incident of the employment, an injury suffered by the employee while going to or returning from his work in the vehicle furnished arises out of and is within the course of the employment.").

*Howard v. Cornerstone Med. Assocs., P.C.*, 54 S.W.3d 238, 240 (Tenn. 2001) (citation omitted). The Supreme Court also recognized an employee's "need to carry his own carpentry tools in his truck, combined with a provision for travel reimbursement in the employment contract," as sufficient to remove a case from the general rule of non-compensability in "coming and going cases," noting that, "[i]n general, we have allowed coverage where the journey itself 'is a substantial part of the services for which the workman was employed and compensated.'" *Id.* at 241 (*quoting Smith v. Royal Globe Ins. Co.*, 551 S.W.2d 679, 681 (Tenn. 1997)).

Another exception adopted by the Supreme Court concerns "traveling employees." *Id.* *See also Autwell v. Back Yard Burgers, Inc.*, No. W2014-00232-SC-R3-WC, 2015 Tenn. LEXIS 185, at *11 (Tenn. Workers' Comp. Panel Mar. 16, 2015). "The 'traveling

employee' exception is generally applied to employees who travel extensively to further the employer's business, such as traveling salesmen. The travel is an integral part of the job and differs from an ordinary commuter's travel, thereby exposing the traveling employee to greater risks." *Howard*, 54 S.W.3d at 241 (citations omitted).

Employee cites *Dugger v. Home Health Care of Middle Tenn.*, No. M2016-01284-SC-R3-WC, 2017 Tenn. LEXIS 206 (Tenn. Workers' Comp. Panel Jan. 31, 2017), in support of her argument that this case falls within an exception to the general rule. In that case, the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel addressed exceptions to the "coming and going rule" and concluded the employer in that case exerted "a degree of control" over the employee's transportation as part of her job caring for patients in their homes. *Id.* at *10. The Appeals Panel reasoned that the employer "deemed [the employee's] use of her vehicle to travel to and from a patient's home as being in the scope of her employment," concluding that, "if the journey itself is a substantial part of the services for which the employee was employed and compensated, then an accident which occurs on that journey is compensable." *Id.* at *11 (citation omitted).

In the present case, it is undisputed that Employer did not provide transportation or reimburse transportation costs for its seasonal employees. Moreover, Employee was not "on the clock" at the time of the injury, but was returning home after her shift was over. In addition, the trip between her home and Employer's facility in Portland was not "a substantial part of the service for which the employee was employed and compensated." *Id.*

Employee contends Employer "was involved with how the employees got to and from work." Yet, it is undisputed Employee could have driven a personal vehicle to and from work, could have hired a ride-sharing service, could have sought a ride with a friend or co-worker, could have used some form of public transportation, or could have chosen to use the bus service provided by Safe Harbor. Employer did not require her to use the Safe Harbor bus but merely facilitated the use of that service to its seasonal workers as a convenience.

In short, we agree with the trial court that Employee did not come forward with sufficient evidence at the expedited hearing to show she would likely prevail at trial in proving this case falls within an exception to the general rule of non-compensability in "coming and going" cases.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case.

5



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Lashonda Smith | ) Docket No. 2018-06-0810 |
| | ) |
| v. | ) State File No. 31238-2018 |
| | ) |
| Macy's Corporate Services, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Joshua D. Baker, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 8th day of January, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Donald Zuccarello | | | | | X | dzuccarello@ddzlaw.com |
| Garrett Estep | | | | | X | gestep@farris-law.com |
| Joshua D. Baker, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Jeanette Baird

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov